UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFFREY PETERSON,

        Plaintiff,

                                Case No.: 24-CV-1279

v.

RAYMOND SCHOOL BOARD,
RAYMOND SCHOOL DISTRICT No. 14,
AUDREY KOSTUCH,
GWEN KELLER,
AMANDA FALASCHI,
JANELL WISE,
ARTHUR BINHACK,
KARI MORGAN,
JOANN KOENECKE,
and
MICHAEL GARVEY,

        Defendants.

## AMENDED COMPLAINT

Plaintiff Jeffrey Peterson, by and through his attorneys, Kravit, Hovel & Krawczyk, s.c., asserts the following for his Amended Complaint against Defendants:

## PARTIES

1.     Plaintiff, Jeffrey Peterson, is an adult resident of the state of Wisconsin and began working as the Principal of Raymond School in Raymond, Wisconsin on July 1, 2021.

2.     Defendant, Raymond School Board, is an agency of the State of Wisconsin located at 2659 76th Street, Franksville, WI 53126.

1

3. Defendant, Raymond School District No. 14 is an agency of the State of Wisconsin located at 2659 76th Street, Franksville, WI 53126.

4. Defendant Michael Garvey is, upon information and belief, an adult resident of the State of Wisconsin who was the administrator of the Raymond school from October of 2022 through December 31, 2023.

5. Defendant Gwen Keller is, upon information and belief, an adult resident of the State of Wisconsin who was a member of the Raymond School Board from April of 2022 through January of 2024.

6. Defendant Audrey Kostuch is, upon information and belief, an adult resident of the State of Wisconsin who was a member of the Raymond School Board from April of 2021 to present.

7. Defendant Janell Wise is, upon information and belief, an adult resident of the State of Wisconsin who was a member of the Raymond School Board from July of 2021 to present

8. Defendant Amanda Falaschi is, upon information and belief, an adult resident of the State of Wisconsin who was a member of the Raymond School Board from April of 2023 until she resigned in June of 2024.

9. Defendant Arthur Binhack is, upon information and belief, an adult resident of the State of Wisconsin.

10. Defendant Kari Morgan is, upon information and belief, an adult resident of the State of Wisconsin.

2

11.     Defendant Joann Koenecke is, upon information and belief, an adult resident of the State of Wisconsin.

## VENUE AND JURISDICTION

12.     This Court has jurisdiction over the Defendants pursuant to 28 U.S. Code § 1331 because the claims involve civil actions arising under the United States Constitution and the laws of the United States.

13.     This Court has jurisdiction over the Defendants on state law claims pursuant to 28 U.S. Code § 1367 because the state claims are so related to claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in the Eastern District of Wisconsin under 28 U.S. Code § 1391 because a substantial part of the events or omissions giving rise to the claim is situated within this district and because at least one of the Defendants reside in the State in which this district is located.

## GENERAL FACTUAL ALLEGATIONS

15.     Plaintiff filed a complaint with the Department of Workforce Development—Equal Rights Division ("ERD") and the Equal Employment Opportunity Commission ("EEOC") as required for discrimination and retaliation claims. The administrative proceeding is ongoing, and Plaintiff is awaiting a decision by the ERD. However, because this claim includes violations of state law against a governmental body, Wisconsin law requires claims to be filed within six months of the service of the disallowance of claim. Wis. Stat. § 893.80(1g). Plaintiff submitted a notice of injury to the Raymond School Board (the "Board") on April 2, 2024. The

3

Defendants' notice of disallowance was served on April 10, 2024. To preserve the state claims, this Complaint was filed along with a motion to stay in order to provide sufficient time for the ERD and EEOC to complete their proceedings.

16. Peterson worked as a teacher and principal in Wisconsin for twenty-nine years. During this time, Peterson earned numerous accolades, including Principal of the Year for the state of Wisconsin, and a mayoral proclamation. On July 1, 2021, Peterson entered into a contract with Raymond School Board and was hired to be the principal of Raymond School, the same school he attended as a child and where he began his teaching career as a fourth-grade teacher.

17. Peterson has been in a same-sex relationship with his partner for thirty-three years. While Peterson has disclosed his sexual orientation to his family and close friends only, he has also disclosed this to his employers in efforts to obtain insurance benefits for his partner.

18. A contentious election for two open seats on the Raymond School Board was held in 2022. In the previous two election cycles, these seats usually only involved one candidate, however in 2022 four candidates competed for two seats. This race received unusually strong interest from political groups, a recount was conducted, and complaints were filed alleging election fraud.

19. The two winning candidates, Gwen Keller and Janell Wise, received strong support from outside political groups, including Convention of States ("COS") and Moms for Liberty. Moms for Liberty has been designated as an extremist

4

organization by the Southern Poverty Law Center ("SPLC").[1] The SPLC has stated that Moms for Liberty has "used their multiple social media platforms to target teachers and school officials . . . and spread hateful imagery and rhetoric against the LGBTQ community."

20.  Joann Koenecke was the vice chair for the Racine County chapter of Moms for Liberty.

21.  During the election, COS distributed a press release stating that one of the winning candidates chose to run for school board because she was unhappy that children watched an episode of the show Arthur, a PBS children's program with the recommended age group of five or older, where one of the characters is a gay teacher who got married. Keller also received support for her campaign from Moms for Liberty.

22.  The president of the School Board, Audrey Kostuch, is a supporter of the Natural Family Foundation, a group with an overt anti-LGBTQ agenda.

23.  Members of the Natural Family Foundation take the following vow:

> **I PROMISE** to support the restoration and concept of the natural family; I believe the family is the foundation of all strong societies including the United States.
>
> **I BELIEVE** the natural family consists solely of one biological born man and one biological born woman committed in a lifelong monogamous relationship to include their biological and or adopted children.
>
> **I COMMIT** myself to work with others to help strengthen this concept, and gladly add my name to the list of Natural Family Foundation supporters.

---

[1] See https://www.splcenter.org/fighting-hate/extremist-files/group/moms-liberty

**I WILL DO** everything within my power to encourage the growth of the natural family and to put it in the prominent place it must occupy in order for this republic to continue to be the greatest nation on earth.

www.natural familystrong.com/promise

24. Shortly after the 2022 school board election, members of the Board gave unprecedented access to an unelected political operative, Arthur Binhack, to scrutinize the school's policies, teachers, and staff.

25. Arthur Binhack has no children attending Raymond School and is a political zealot who ran for a seat on the Board twice and lost both times. After his election loss, Binhack supported those school board candidates with extreme anti-LGBTQ views, including former Board member Gwen Keller.

26. Binhack's own anti-LGBTQ views were public and known to members of the Board who gave Binhack access to the school, the curricula, and the staff. Binhack's anti-LGBTQ views were expressed online and included Nazi quotes for which Binhack was suspended from social media platforms including Facebook.

27. Despite Binhack's openly bigoted views, members of the Board colluded and conspired with him to enact an anti-LGTBQ agenda that affected decisions about curricula, policies, and staff—including the Plaintiff.

28. The Board hired outside counsel to conduct an investigation on Peterson, and the results were submitted on October 17, 2022, just four months after the new school board members took office.

29. On or around October of 2022, Defendant Michael Garvey was hired as interim superintendent by the new school board. Garvey started work on or around November 17, 2022, as a part-time employee working two days per week.

6

30. Garvey made numerous comments to Peterson about LGBTQ teachers which were veiled messages that Peterson's sexual orientation was a problem. These comments included a story about a gay teacher at Garvey's other school who "didn't fit in," was never accepted by other teachers or the community and eventually left his position. In a subsequent conversation, Garvey told Peterson that he had discovered a lesbian teacher he used to work with had become Facebook friends with some of her former students and expressed to Peterson that this was inappropriate because the lesbian teacher's Facebook page contained photographs of her and her girlfriend.

31. On or around December 15, 2022, the Board held a private meeting they referred to as the retreat ("Retreat") in spite of open meetings laws requiring public access. The retreat was attended by most Board members, Garvey, and Binhack. No members of the general public were provided with notification of this meeting, nor were records of the meeting provided.

32. During the Retreat, the Board members, Garvey, and Binhack discussed school staff and personnel, including making Garvey the permanent superintendent.

33. After the Retreat, Binhack was given access to evaluate the school's Social and Emotional Learning ("SEL") curriculum and was able to freely tour the school and question staff members. The Board subsequently voted to remove the SEL curriculum.

7

34. On April 24, 2023, just five months after Defendant Garvey began working as interim superintendent, and after only thirty-four days of working in the building with Peterson, Garvey gave Peterson a very poor performance evaluation—the first and only poor evaluation Peterson had received during his twenty-nine years working for Wisconsin schools. Furthermore, contrary to common practice, Peterson received no notification that he would be evaluated, and the required evaluation tools, rubric, and standards were not used.

35. Monthly school board meetings started to become more active as many decisions the board made stirred controversy, including banning certain books from the Raymond School library. On August 21, 2023, community members attended the monthly meeting to show support for Peterson. Approximately thirty community members spoke at the meeting to commend Peterson for his impactful school leadership.

36. That same day, Peterson delivered a letter to the Board, putting them on notice that he believed he was being discriminated against.

37. The next week, Binhack was observed distributing flyers at a Village of Raymond board meeting on August 28, 2023. The content of this flyer included incendiary language claiming that "liberal extremists" and "MPS antagonists" are "spewing hateful Rhetoric." The flyer specifically blames Peterson and claims that Peterson "enlisted the help of the MPS extremists and unionized teachers of Raymond School to do his bidding." The flyer further calls for the public to "take our school back" and warns if "we do not stop these People now, what is to

8

say they wont [sic] move on to the government and continue stripping the core Values of our community away piece by piece."

38. Approximately two months later, a letter was circulated to various members of the local community and members of the press that alleged Peterson was sexualizing and "grooming" children. The letter further called for a "public condemnation" of Peterson.

39. Morgan emailed the letter accusing Peterson of sexualizing and grooming children, along with a highly edited version of Peterson's personnel file to Binhack, telling him to "Please share this letter with anyone and everyone you know! If anyone asks, you did not get this from me!"

40. The letter accusing Peterson of sexualizing and grooming children and edited version of Peterson's personnel file was also given to Joann Koenecke, the local chair of the organization Mom's for Liberty. Koenecke disseminated the letter and Peterson's personnel file to others, including to Fox6 Milwaukee reporter Jason Calvi.

41. On or about September 18, 2023, Binhack made a public post encouraging residents to attend a school board meeting to support Peterson's removal. Binhack made several unfounded allegations against Peterson's performance and claimed that the Board knows of more substantial allegations against Peterson. Binhack pleaded to the readers to attend the meeting and continue "fighting for us and our community values."

9

42. On September 26, 2023, Kari Morgan wrote a letter with the assistance of board members Keller, Kostuch, and Falaschi that contained false information that Peterson was being investigated for inappropriate conduct with children and other information that was not publicly available. Koenecke published the September 26, 2023, letter on the Moms for Liberty Facebook page on October 13, 2023.

43. Nine days later, on or about September 27, 2023, Garvey—who was not in the building—called Peterson at around 7:15AM, directed him to remove a resident from the schoolgrounds and shouted at him to "take control of that building." Peterson, who was at the school and was unaware of any disturbance, walked into the main office and found the resident, Mr. Berman, seated quietly in the office and scrolling through his cell phone. Peterson asked Berman to leave, and Berman complied.

44. Berman was at the school to request records from the school board meetings, including the private Retreat held by the school board without public notice.

45. That same day, Garvey placed the school and staff on "lockdown" during which classroom doors were kept shut and locked, no visitors were allowed in the building, recess was held indoors, and students needed to be escorted by adults between classes or to use the restroom. This lockdown lasted two additional days.

46. A Board meeting was held on or around September 27, 2023. Claiming to be in fear for their own safety, the Board did not allow the public to attend

10

and instead broadcast the meeting via video. The board cited threats they received to justify the change. At least five law enforcement officials were present to provide protection. At this meeting, Board president Audrey Kostuch stated publicly that the Board would issue a notice of non-renewal for Peterson's contract. Kostuch cited the contents of Peterson's personnel file as justification for the decision but provided no specific documents.

47. The following day, Peterson arrived at school at approximately 7:00 AM as usual. As he was walking from his office to supervise parent drop off—a time when all the parents and children are lined up in front of the building—Garvey approached Peterson and informed him he was being placed on administrative leave pending an investigation. Garvey took Peterson's keys and computer and escorted Peterson from the building in front of the parents lined up to drop off their kids. Garvey also arranged to have two Racine County Sheriff's deputies present while Peterson left the premises.

48. On or around September 29, 2023, Peterson filed a discrimination complaint with the Department of Workforce Development—Equal Rights Division claiming that since the new Board took office he was discriminated against because of his sexual orientation.

49. On October 5, 2023, Defendant Michael Garvey issued a written notice to the Plaintiff that he had received a public records request seeking records and files that the Plaintiff is the subject of. This records request was made by Binhack.

11

50. The open records request was coordinated by Binhack, Koenecke and Morgan. Binhack made the request to Raymond School. Joanne Koenecke made the request to Yorkville school, where Peterson had previously worked. Binhack and Koenecke provided the requests to Morgan, manipulated the records that would be released to the public, and Koenecke disseminated the manipulated open records to the media.

51. Morgan wanted Binhack to keep her involvement in the open records request and their attempt to have Plaintiff removed as principal secret.

52. Morgan received school's complete open records packet from Binhack, manually extracted a targeted 36-page subset to strip out over 100 pages of exculpatory evidence, and loaded the altered files onto thumb drives alongside an anonymous letter accusing Peterson of child grooming. The "anonymous" letter was drafted by Morgan with the assistance and aid of Keller, Kotusch, and Falaschi.

53. Text messages between Board Member Amanda Falaschi and Moms for Liberty Chair Joann Koenecke actively coordinating the delivery of these altered files and the anonymous letter to Fox6 Milwaukee reporter Jason Calvi, with Koenecke bragging, "I am the one to get the info to the media." Koenecke also provided the anonymous letter to CBS 58 reporter Adam Rife at the behest of Morgan and Falaschi.

54. Defendant Garvey cited Wisconsin public records laws, Wis. Stat. §§ 19.31-19.39 in the October 5 notice, and he enclosed with the notice copies of the records he indicated he had identified for disclosure pursuant to the request.

12

55. The records enclosed within the October 5 notice were partially redacted, but still included personally identifiable information, and otherwise sensitive information, including the home address of Peterson's sister, the name and gender of Peterson's partner, health records, and financial information. Notably, the health insurance records indicated that Peterson was in a same sex relationship—a fact that Peterson considered private information with no public value.

56. Peterson and his counsel informed Defendant Garvey that they were objecting to the release of these records. Further, Peterson, citing the required balancing test records custodians must perform prior to releasing records, told Garvey that the active threats against him and Binhack's attempt to incite others in the community to take action against Peterson were the reasons he wanted Garvey to not release the records at the present time. Garvey never responded to Peterson's letter or addressed Peterson's safety concerns.

57. Nine days later, the Board informed Peterson, through counsel, that the records had been released to at least two requesting parties and that Binhack was one of the recipients. The other was a reporter for TMJ4 news. The Board continued to release these same records over Peterson's repeated objections and have made them publicly available via the school's website which is presently accessible to any member of the public.

58. Peterson objected to the decision not to renew his contract and requested a public hearing. The nonrenewal hearing took place on December 6, 2023.

13

59. In preparation for this hearing, Peterson and counsel reviewed numerous public documents, including internal emails between Board members. During this discovery, emails were uncovered that validated allegations that Board member Gwen Keller had an anti-LGBTQ animus.

60. Further, residents informed Peterson that Board member Keller was calling residents she thought she had support from and told them that Peterson "was trying to turn kids gay" and that she was "going to start the process," referring to using formal proceedings against Peterson.

61. Part of the evidence presented to the Board of Gwen Keller's anti-LGBTQ animus was an email she sent to Garvey on June 2, 2023, that asked for a policy preventing teachers from teaching topics related to a person's sexuality and that conflated sexual orientation with pedophilia. The email further stated "The next topic coming down is considering pedophiles as a sexual orientation. Heaven forbid this topic be broached in front of our children!"

62. Peterson also presented the Board with another of Gwen Keller's e-mails to Garvey expressing homophobic views that she sent on March 24, 2023, in which she states that she "intuitively" thought parents would be concerned about Peterson "teaching boys human growth and development" and states that she previously discussed this with Garvey.

63. Garvey and the Board required Peterson to have another staff member in the room while teaching human growth and development. The Board

permitted Peterson's successor, a straight male, to teach human growth and development without any other staff members present.

64. During the hearing on December 6, 2023, Peterson presented the Board with information and evidence related to his claim that he was being discriminated against, including the testimony of several teachers.

65. The Board voted 4-1 in favor of nonrenewal. Those members who voted for nonrenewal included Defendants Audrey Kostuch, Janell Wise, Gwen Keller, and Amanda Falaschi. Board member Amy Helvick voted to renew Peterson's contract and publicly stated that she thought Peterson's was not being fairly or accurately assessed.

66. On December 6, 2023, the day of the public hearing, Garvey informed teachers that they would be questioned by an investigator about Peterson and answering the questions was compulsory. The next morning, an email went out to several teachers and staff notifying them that they would need to schedule a time in the coming week to answer questions regarding an investigation into Peterson's misconduct. Many teachers felt that this was done with the intent of suppressing support for Peterson immediately before the public hearing.

67. The misconduct investigation was conducted by Stadler Sacks, LLC, a firm that advertises that it is in the business of "protecting corporations, employers, & governmental entities." The investigation concluded on or around February 6, 2024, and the final report ("Sacks Report") was dismissive of the witnesses supporting Peterson, claimed Peterson was lying without any direct or

15

circumstantial evidence aside from testimony that conflicted with the testimony of Peterson and many other teachers and staff. The investigator claimed, without evidence or support, that Garvey was telling the truth. The investigator noted that he requested an audit of Peterson's work e-mails, but that the school IT staff had not yet provided them, and he did not believe the e-mails were necessary. The failure to review Peterson's e-mails—a task that could have determined which witness was telling the truth about matters discussed in e-mail conversations demonstrates the incompetence and bias of the Sacks investigation.

68. Further, the Sacks Report relied on testimony from key witnesses, and Defendants, that evidenced prejudice and homophobia. For example, the investigator reported that Board president Audrey Kostuch stated that she feels that Mr. Peterson "shouldn't be around children" and there is "something darker there." The investigator made no record of any follow up questions to these comments.

69. The investigator recommended terminating Peterson's current employment contract and cited, among other equally absurd reasons, the following justifications for termination: (1) Peterson made "statements to separate himself from the Board;" (2) Peterson arranged for a picture to be taken of him discarding the SEL curriculum materials; (3) Peterson, in his individual capacity, "had a relationship with" a woman who attended public Board meetings; and (4) Peterson did not do or say anything when some teachers showed up to a breakfast event with the Board while wearing black and not eating in what the Board perceived as a protest.

70. The Sacks Report was no more than pretext to fire Peterson based on his sexual orientation.

71. On May 3, 2024, the school informed Peterson that his contract was not being terminated, but that he would be placed on unpaid leave for seventy-six days—a period that was exactly how much time remained on his contract. Peterson appealed this decision through the process prescribed by Board policy.

72. Peterson was instructed to appeal the decision based on the grievance procedures for appealing a disciplinary action. Peterson contended that he should use the appeals process for termination, because he was employed under a contract with a "termination for cause" provision and because he was no longer receiving a salary, his contract was terminated. Peterson followed the direction of the board, a process that culminated with a hearing before an Impartial Hearing Officer ("IHO").

73. At the hearing, on March 29, 2024, Peterson, through counsel, argued that Peterson was "terminated" or "fired," which would have required a separate process. The IHO sided with the Board and found that not paying Peterson for seventy-six days—a period that coincided with the amount of time Peterson had remaining on his contract—was not a termination of the contract. Peterson challenged this finding to the Board, and they rejected his appeal.

74. Peterson's reputation has been severely injured by the actions of the Defendants. The Defendants and their proxies fabricated a pretext to fire Peterson based on his sexual orientation. This pretext includes false statements

17

about his performance, allegations of pedophilia, and numerous other fictitious accusations. As a result, Peterson has suffered severe injuries to his reputation and mental and emotional well-being. Despite applying for over twelve jobs in Wisconsin schools, Peterson was unable to find employment for over a year in the field he was dedicated to for three decades. The injuries to Peterson's mental and emotional health have been severe.

75. Throughout the administrative proceedings, the Defendants have made numerous attempts to justify the adverse employment actions against Peterson through pretext. While the true reason for these actions is certainly illegal discrimination and retaliation, even the pretext offered by the Defendants is likely a violation of Peterson's Constitutional rights. As such, there are alternative claims for relief below: (1) for discrimination and retaliation; and (2) for violations of Peterson's First Amendment rights.

**FIRST CLAIM FOR RELIEF**
**(Discrimination in violation of Title VII of the Civil Rights Act of 1964 against Raymond School Board)**

76. Plaintiff restates and realleges all previous allegations as if fully stated herein.

77. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964 because of his sexual orientation.

78. Defendants took adverse employment actions against Plaintiff by (1) not renewing Plaintiff's employment contract; (2) terminating Plaintiff's employment contract; (3) terminating Plaintiff's pay and benefits prior to the end

18

date of Plaintiff's employment contract; and (4) treating Peterson differently than heterosexual staff by requiring Plaintiff to teach students with other staff present.

79. The Defendants' adverse employment actions were because of Plaintiff's sexual orientation and would not have occurred but for Plaintiff's sexual orientation.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in violation of Title VII of the Civil Rights Act of 1964 against Raymond School Board)**

80. Plaintiff restates and realleges all previous allegations as if fully stated herein.

81. Plaintiff engaged in protected activity by asserting his right to not be discriminated against based on his sexual orientation.

82. Defendants intentionally gave Peterson extremely poor performance evaluations, suspended him from his employment with pay, suspended him from his employment without pay, and terminated his employment.

83. Plaintiff's assertion of his right to not be discriminated against based on his sexual orientation was the reason Defendants suspended him from his employment and terminated his employment. Further, the retaliation against Peterson included the Defendants using their power to disclose public records to disclose information about Peterson that was of no public interest such as the sex of his partner, the address of his family member, and other health and financial records.

**THIRD CLAIM FOR RELIEF**
**(Discrimination in violation of the Wisconsin Fair Employment Act Wis. Stat § 111.31 against Raymond School Board)**

19

84. Plaintiff restates and realleges all previous allegations as if fully stated herein.

85. Plaintiff is a member of a protected class under Wisconsin Statute Section 111.31(1) because of his sexual orientation.

86. Defendants took adverse employment actions against Plaintiff by (1) not renewing Plaintiff's employment contract; (2) terminating Plaintiff's employment contract; (3) terminating Plaintiff's pay prior to the end date of Plaintiff's employment contract; and (4) treating Peterson differently than heterosexual staff by requiring Plaintiff to teach students with other staff present.

87. The Defendants' adverse employment actions were because of Plaintiff's sexual orientation and would not have occurred but for Plaintiff's sexual orientation.

**FOURTH CLAIM FOR RELIEF**
**(Retaliation in violation of the Wisconsin Fair Employment Act Wis. Stat. § 111.322(3) against Raymond School Board)**

88. Plaintiff restates and realleges all previous allegations as if fully stated herein.

89. Plaintiff engaged in the protected activity by asserting his right to not be discriminated against based on his sexual orientation.

90. Defendants intentionally gave Peterson extremely poor performance evaluations, suspended him from his employment with pay, suspended him from his employment without pay, and terminated his employment.

91. Plaintiff's assertion of his right to not be discriminated against based on his sexual orientation was the reason Defendants suspended him from his

20

employment and terminated his employment. Further, the retaliation against Peterson included the Defendants using their power to disclose public records to disclose information about Peterson that was of no public interest such as the sex of his partner, the address of his family member, and other health and financial records.

**FIFTH CLAIM FOR RELIEF**
**(42 U.S.C. 1983—Equal Protection Violations of the 14th Amendment to the U.S. Constitution against Defendants Gwen Keller, Janell Wise, Audrey Kostuch, Amanda Falaschi, and Michael Garvey)**

92. Plaintiff restates and realleges all previous allegations as if fully stated herein.

93. Plaintiff is the member of a protected class based on his sexual orientation.

94. Defendants, as school Board Members and the Superintendent of school, acted under color of law when they intentionally discriminated against Plaintiff and/or conspired to discriminate against Plaintiff based on his sexual orientation.

95. Defendants knew they had no justification, based on their public duties, for singling Plaintiff out for unfavorable treatment. Defendants acted for personal reasons, with discriminatory intent and effect.

**SIXTH CLAIM FOR RELIEF**
**(42 U.S.C. 1983—Equal Protection Violations of the 14th Amendment to the U.S. Constitution against Defendants Arthur Binhack, Kari Morgan, and Joann Koenecke )**

96. Plaintiff restates and realleges all previous allegations as if fully stated herein.

21

97. Plaintiff is the member of a protected class based on his sexual orientation.

98. Defendant Binhack was a private party who acted under color of law by conspiring with public officials.

99. Defendant Morgan was a private party who acted under the color of law by conspiring with other public officials.

100. Defendant Koenecke was a private party who acted under color of law by conspiring with public officials.

101. Defendants Binhack, Morgan and Koenecke acted under color of law by conspiring with and acting jointly with superintendent Garvey and school Board members.

102. Superintendent Garvey and the school Board members are government actors due to their employment and/or role in the local government.

103. Defendants Binhack, Morgan, Koenecke and the other Defendants reached an understanding to deprive the Plaintiff of his constitutional right to equal protection.

104. Defendants Binhack, Morgan, and Koeneck were willful participants in joint activity with the State or its agents in carrying out the discrimination and retaliation against Plaintiff.

**SEVENTH CLAIM FOR RELIEF**
**(Wis. Stat. § 995.50—Violation of Plaintiff's Right of Privacy against Raymond School Board)**

105. Plaintiff restates and realleges all previous allegations as if fully stated herein.

22

106. Defendants intentionally made a public disclosure of facts regarding Plaintiff when they released public records that identified his sexual orientation, then subsequently posted those records to a website accessible to the public.

107. Plaintiff's sexual orientation was a private fact, one that he only disclosed to his family, close friends, and on medical insurance records.

108. Plaintiff was highly offended by the public release of this information and requested Defendants not disclose this information and remove it from the website.

109. Defendants were aware that there was no legitimate public interest in the matter; or, in the alternative, Defendants acted unreasonably and recklessly as to whether there was a legitimate public interest in the matter.

**EIGHTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE TO TITLE VII CLAIMS)**
**(42 U.S.C. 1983—Violation of Public Employee's First Amendment Right to Free Speech Retaliation Claim against Michael Garvey, Audrey Kostuch, Gwen Keller, Amanda Falaschi, and Janell Wise)**

110. Plaintiff restates and realleges all previous allegations as if fully stated herein.

111. The Defendants used the Sacks report to justify the adverse employment actions they took against Peterson. This report cites several examples of Plaintiff's exercise of free speech as the primary reason for the adverse employment actions Defendants took against Plaintiff.

23

112. Plaintiff is alleged by Defendants to have exercised his free speech rights by allowing teachers and staff to protest when many teachers chose to wear black and declined to eat a meal when meeting with the Board. The report also alleges that Peterson participated in this protest by not eating with the Board.

113. Defendants also allege Plaintiff exercised his free speech rights by showing a photograph of discarded SEL materials to others.

114. Defendants further alleged that Plaintiff exercised his free speech rights by speaking with others by informing them of the school Board's actions against him.

115. Defendants intentionally retaliated against Plaintiff by suspending him and terminating his employment. This retaliation was because of the Plaintiff's alleged exercises of free speech.

116. The Defendants acted under color of law to retaliate against Plaintiff's exercise of free speech.

## NINTH CLAIM FOR RELIEF
### (Defamation Under Wisconsin Law Against Keller, Falaschi, Kostuch, Morgan and Koenecke)

117. Plaintiff restates and realleges all previous allegations as if fully stated herein.

118. Upon information and belief Kari Morgan drafted the letter that accused Peterson of sexualizing and grooming children as part of the campaign to have Peterson removed as principal of Raymond School.

24

119. Morgan then sent the letter accusing Peterson of sexualizing and grooming children to Binhack and Koenecke. Joann Koenecke further disseminated the letter to others, including a Fox6 Milwaukee reporter.

120. The allegations of grooming and sexualizing children are false.

121. Morgan and Koenecke knew that the letter's allegations of grooming and sexualizing children were false when they distributed the letter to others.

122. The allegations of grooming and sexualizing children were made with the intent to harm Plaintiff's reputation in the community.

123. The allegations of grooming and sexualizing children were made with express and actual malice.

**TENTH CLAIM FOR RELIEF**
**(Tortious Interference with Contract Under Wisconsin Law Against Morgan, Binhack and Koenecke)**

124. Plaintiff restates and realleges all previous allegations as if restated herein.

125. Plaintiff had a contract with the Raymond School Board.

126. Morgan, Binhack and Koenecke intentionally interfered with that contract through their campaign to have Plaintiff removed as principal because of his sexual orientation.

127. As a result of the interference by Morgan, Binhack, and Koenecke, Plaintiff's contract was not renewed by the Raymond School Board

**ELEVENTH CLAIM FOR RELIEF**
**(Civil Conspiracy Under Wisconsin Law Against Morgan, Binhack, and Koenecke)**

25

128. Plaintiff restates and realleges all previous allegations as if restated herein.

129. Morgan, Binhack and Koenecke knowingly agreed and acted in concert to accomplish unlawful objectives, including the violation of Plaintiff's civil rights, defamation, and tortious interference with contract.

130. Morgan, Binhack, and Koenecke carried out the conspiracy by agreeing that Binhack and Koenecke would obtain personnel records of Peterson, Morgan would manipulate those records and draft an anonymous letter accusing Plaintiff of grooming and sexualizing children and that Binhack, Morgan and Koenecke would distribute that letter and manipulated records to others personally or through social media websites. Their actions were for the purpose of removing Plaintiff as principal of Raymond School because of his sexual orientation.

131. The actions of co-conspirators Morgan, Binhack, and Koenecke are the direct and proximate cause of the financial harm suffered by Plaintiff because he did in fact lose his job as principal of Raymond School.

132. The actions of co-conspirators Morgan, Binhack and Koenecke have caused direct and proximate harm to Plaintiff's reputation.

133. Each of Morgan, Binhack and Koenecke are jointly and severally liable for all damages caused by the conspiracy.

WHEREFORE, Plaintiff Jeffrey Peterson demands a judgment for:

a. Front pay in an amount to be determined at trial.

b. An award for back-pay as necessary to compensate the Plaintiff for lost benefits and wages;

c. An award for other compensatory relief at an amount determined to be determined at trial;

d. An order for punitive damages against the individual defendants in an amount to be determined at trial;

e. An order requiring the Defendants to redact public records to conceal private information of no public interest;

f. An order that the private records shall not be produced in response to any future public records request;

g. An award of the Plaintiff's attorney fees and costs; and

h. Such other and further relief as the Court finds just and proper.

**TRIAL BY JURY OF 12 DEMANDED**

Dated: _____                          KRAVIT, HOVEL & KRAWCZYK s.c.


                                     *s/ Brian T. Fahl*
                                     Brian T. Fahl, SBN. 1043244
                                     825 North Jefferson St., Ste. 500
                                     Milwaukee, Wisconsin 53202
                                     (414) 271-7100 (telephone)
                                     (414) 271-8135 (facsimile)
                                     btf@kravitlaw.com
                                     *Attorneys for Plaintiff*

27